PEOPLE *v.* COLEMAN

1. CRIMINAL LAW — JUVENILES — TRIAL — JURISDICTION — PROBATE COURT — WAIVER.

Proceedings in which probate court waived jurisdiction over juvenile defendant so that he could stand trial as an adult on a charge of assault with intent to rape did not deny defendant equal protection of the law where a waiver hearing was held at which defendant, his mother, and his attorney were present, defendant's case history was fully reviewed by the probate judge, defendant's attorney was given access to all social records, and the probate judge made an order waiving jurisdiction and stated on the record his reasons for the waiver, even though the probate judge did not file his findings and reasons until 6 months later.

2. CRIMINAL LAW—JUVENILES—ARREST—FINGERPRINTS.

Police officers are required by statute to take the fingerprints of arrested persons, including juveniles, and a juvenile defendant's fingerprints were properly taken while he was in custody on a charge of assault with intent to rape (CLS 1961, § 28.243).

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Juvenile Courts § 19.
[2] 21 Am Jur 2d, Criminal Law § 369.
 Physical examination or exhibition of, or tests upon, suspect or accused, as violating rights guaranteed by Federal Constitution. 16 L Ed 2d 1332.
[3] 44 Am Jur, Rape §§ 100, 101.
[4] Courts' right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant. 96 ALR2d 768.

3. CRIMINAL LAW—ASSAULT WITH INTENT TO RAPE—EVIDENCE—CIR-
CUMSTANTIAL EVIDENCE—SUFFICIENCY.

Circumstantial evidence may be sufficient in a criminal case to
place the question of defendant's guilt before the jury, and the
question was properly placed before the jury at defendant's
trial for assault with intent to rape where the evidence showed
that the 12-year-old victim was seized from behind, a male
person placed a hand over her mouth and told her to cooperate
or she would be killed, a paper bag was placed by the assailant
over the victim's head, the victim led the police to the scene
of the assault moments later, and a fingerprint and a palm
print of defendant were found on the bag at the assault scene
(CLS 1961, § 750.85).

4. CRIMINAL LAW—SENTENCE—PROBATION—REPORT—JUVENILE—REC-
ORD.

A probation officer must inquire into defendant's antecedents,
character, and circumstances and make a report to the sen-
tencing judge before defendant can be sentenced for commis-
sion of a felony, and the probation officer's inquiry properly
includes an examination of defendant's juvenile record; a
statutory provision barring the use of a juvenile record as
"evidence" refers only to testimony and matters actually pre-
sented at trial (CL 1948, §§ 771.14, 712A.23).

Appeal from Recorder's Court of Detroit, Frank
G. Schemanske, J. Submitted Division 1 October 7,
1968, at Detroit. (Docket No. 3,765.) Decided
October 1, 1969.

Lamar Coleman was convicted of assault with in-
tent to rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Samuel J. Torina,* Chief Ap-
pellate Lawyer, and *Luvenia D. Dockett,* Assistant
Prosecuting Attorney, for the people.

*George C. Parzen,* for defendant.

Before: J. H. Gillis, P. J., and R. B. Burns and Kelley,* JJ.

Kelley, J. On appeal of his jury conviction of assault with intent to rape,[1] defendant makes three claims.

*First:* The waiver of the juvenile court, on June 15, 1966, to recorder's court where no findings and reasons therefor were filed until December 12, 1966, did not satisfy the equal protection of law provision of the Federal Constitution and the juvenile court act.

At the time of the alleged offense on December 8, 1965, defendant's age was 16 years, 5 months. Within two days thereafter defendant had been arrested, placed in the Wayne County Youth Home and finger-printed. It appears that he was already a ward of the probate court and was involved in another proceeding.

Repeatedly, defendant cites *Kent* v. *United States* (1966), 383 US 541 (86 S Ct 1045, 16 L Ed 2d 84), a case which reversed a criminal conviction on the ground that the waiver of Kent, a juvenile, for trial in criminal court was invalid. Construing a waiver provision similar to ours,[2] the Supreme Court held:

"[A]s a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel." 383 US p 557.

---

* Circuit Judge, sitting on the Court of Appeals by assignment.
[1] CLS 1961, § 750.85 (Stat Ann 1962 Rev § 28.280).
[2] CL 1948, § 712A.4 (Stat Ann 1962 Rev § 27.3178[598.4]).

After careful review of the record,[3] we are of the opinion that the waiver proceedings were in accord with both due process and our juvenile court act. A waiver hearing was held pursuant to CL 1948, § 712A.4 (Stat Ann 1962 Rev § 27.3178[598.4]), at which defendant, his mother, and his counsel were present. Defendant's case history was fully reviewed by the probate judge, and counsel for defendant was given access to all social records. Following the waiver hearing, the probate judge made an order waiving jurisdiction and stated on the record his reasons therefor. Defendant's counsel not only knew the reasons for waiver but also could have obtained a transcript of the waiver proceedings. Defendant has not shown any prejudice or detriment resulting from the filing of the statement the following December.

Defendant also relies upon *People* v. *Roberts* (1961), 364 Mich 60. In that case two policemen arrested and questioned a 15-year-old boy for the murder of a young woman. His confession, thereby induced, constituted the only evidence offered at the preliminary examination linking defendant to the murder. Defendant contended that failure of the officers to take him *immediately* before the juvenile division of the probate court should deprive the prosecution of the use of such confessional statements made to police officers during defendant's interrogation at a police station. The circuit court's denial of defendant's motion to quash was affirmed by an equally divided court. The instant case does not in-

---

[3] Our review has included an examination of the transcript of the waiver proceedings. *Sua sponte,* we called for production of the transcript under the authority granted by CLS 1961, § 712A.28 (Stat Ann 1962 Rev § 27.3178[598.28]). In the future, whenever the sufficiency of the waiver proceedings is questioned, we recommend that, in addition to the formal waiver order, the record before the reviewing court also contain a transcript of the waiver hearing. *Cf. Templeton* v. *State* (1968), 202 Kan 89 (447 P2d 158). Otherwise, meaningful review is impossible.

volve questioning, but rather the taking of fingerprints. CLS 1961, § 28.243 (Stat Ann 1969 Rev § 4.463), which requires police officers to take fingerprints of arrested persons, does not exclude juveniles from its operation.

*Second:* There was insufficient evidence to sustain a conviction.

Defendant neither testified nor produced any witnesses. No witness could positively identify defendant by sight as the assailant.

As the 12-year-old victim was walking home from school, a male person placed a hand over her mouth, told her to cooperate or she would be killed, and placed a paper bag over her head. He then forced her to walk some distance to a remote courtyard with no doors opening off it, situated alongside an apartment building. An investigating officer thus described the path followed:

"The area pointed out to me by [the victim] was we had to go in an alley and you walk up the alley and to your left was a set of stairs that went down under a building. It was a tunnel affair going under the building. You went down the stairs through the tunnel and up into another, up another flight of stairs and you were then in a courtyard sort of."

The victim described actions by her assailant which constituted, at the very least, an attempt to rape. After he ran out of the courtyard, she threw down the bag and also ran out.

Within a matter of minutes she led police to the scene where she showed them the bag. Both a fingerprint and part of a palm print found on the bag were those of defendant.

A woman testified that she saw a boy run out of the alley, closely followed by the victim. Her de-

scription of his build, age and race matched those of the defendant.

Undisputed evidence clearly established the commission of the crime charged. Even though circumstantial, there was sufficient evidence of defendant's identity to present a question for the jury. *People* v. *Abernathy* (1931), 253 Mich 583.

*Third:* The juvenile court and the trial court violated defendant's rights to procedural due process by using, at sentencing, juvenile records of defendant.

Defendant relies on § 23 of that portion[4] of the probate code which pertains to juveniles:

> "A disposition of any child under this chapter, or any evidence given in such case, shall not in any civil, criminal or any other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever, except in subsequent cases against the same child under this chapter."

Prior to imposition of sentence in a felony case, a probation officer must inquire into the defendant's antecedents, character and circumstances and furnish a report thereon to the sentencing judge. CL 1948, § 771.14 (Stat Ann 1954 Rev § 28.1144) requires:

> "Before sentencing any person charged with a felony, and, if directed by the court, in any other case where any person is charged with a misdemeanor within the jurisdiction of the court, the probation officer shall inquire into the antecedents, character and circumstances of such person or persons, and shall report thereon in writing to such court or magistrate. * * *"

Webster defines "antecedents" and "character" thus:

---

[4] CL 1948, § 712A.23 (Stat Ann 1962 Rev § 27.3178[598.23]).

*antecedents:* the significant events, conditions, principles, traits, or activities of one's earlier life.

*character:* the complex of accustomed mental and moral characteristics and habitual ethical traits marking a person.

To be true and complete, the required inquiry must include whatever reasonably obtainable juvenile record an accused may have. Only by examination of a complete report, containing any such record, can the court properly perform its duties: to determine whether "defendant is not likely again to engage in an offensive or criminal course of conduct" and whether "the public good does not require that the defendant shall suffer the penalty imposed by law";[5] and, if probation be granted, "to fix and determine the period and conditions" thereof.[6]

Nor does § 23 preclude examination of juvenile records for the purpose of sentencing. The express terms of the statutory prohibition bar only the use of prior juvenile dispositions as "evidence". Read in the light of its generally accepted meaning, "evidence" connotes testimony and matters actually presented at trial. The post-conviction examination of juvenile records in order to impose a fair and just sentence is not a use of such records as "evidence". *Cf. Commonwealth* v. *Myers* (1958), 393 Pa 224 (144 A2d 367); *State* v. *Jones* (1966), 91 NJ Super 67 (219 A2d 193).

Affirmed.

All concurred.

---

[5] CLS 1961, § 771.1 (Stat Ann 1969 Cum Supp § 28.1131).
[6] CL 1948, § 771.2 (Stat Ann 1954 Rev § 28.1132).